IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREG ALAN PECK, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 19-4725 |
| ANDREW M. SAUL,[1] | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**Timothy R. Rice**                                                                        September 30 , 2020
**U.S. Magistrate Judge**

      Plaintiff Greg Alan Peck filed an application for Disability Insurance Benefits (DIB) alleging disability beginning November 18, 2016. He challenges the Commissioner's final decision that he became disabled only on August 7, 2018, and was not disabled before that date. For the reasons explained below, I deny Peck's claims.[2]

      Peck alleges that he is unable to work due to left knee instability following two knee replacement surgeries, diabetes, and pinched nerves and disc degeneration of the neck. R. at 178. After reviewing the record and hearing testimony, the Administrative Law Judge (ALJ) issued a partially favorable decision, finding Peck disabled for purposes of DIB on June 5, 2018. Id. at 57-74. The ALJ explained that, since Peck's alleged November 18, 2016 onset date, he retained the residual functional capacity (RFC) to perform a range of light work, but because

---

[1]     Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Saul was automatically substituted into cases brought against the Commissioner upon his appointment.

[2]     Peck consented to the jurisdiction of a United States Magistrate Judge on November 16, 2019 (doc. 6), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

Peck was close to turning 55 years old, his age category changed to "an individual of advanced age" as of June 5, 2018.[3]

Peck filed a request for review of the ALJ's decision with the Appeals Council which was granted. Id. at 153-57. In August 2019, the Appeals Council issued its own decision, finding Peck entitled to a period of disability beginning on August 7, 2018. See id. at 10-19; see also 20 C.F.R. § 404.981 (Appeals Council may grant a request for review and issue its own decision); Aruanno v. Comm'r of Soc. Sec., 471 F. App'x 87, 88 (3d Cir. 2012).

Peck contends that he should have been found disabled as of the alleged onset date of November 18, 2016 and that the ALJ erred by discounting the opinion of his treating provider when he concluded that Peck had the RFC for a limited range of light work. Pl. Br. (doc. 13) at 4-8. Although Peck seeks reversal of the ALJ's decision, see id. at 8, it is the August 2019 decision of the Appeals Council that is before me for review. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (if the Appeals Council grants review, its decision is the "final" decision of the Commissioner for purposes of judicial review); Elshinnawy v. Comm'r of Soc. Sec. Admin., 244 F. App'x 459, 461 (3d Cir. 2007). The Appeals Council concluded that the ALJ committed an error of law at step five by finding a disability onset date of June 5, 2018 rather than August 7, 2018, but adopted the ALJ's findings with respect to Peck's severe impairments, residual

---

[3] A borderline age situation exists if a claimant is "within a few days to a few months of a higher age category," and would be disabled under the higher age category. 20 C.F.R. § 404.1563(b). A person "closely approaching advanced age" is defined as ages 50 to 54, and a person of "advanced age" as 55 and older. 20 C.F.R. § 404.1563(d)-(e). On Peck's November 18, 2016 alleged onset date, he was 53 years old; he turned 55 years old on November 6, 2018, a few months after the ALJ issued his decision. R. at 14, 16, 24. The ALJ applied the age categories non-mechanically and concluded that, beginning on June 5, 2018, Peck's age category changed, rendering Peck "disabled" according to Medical-Vocational Rule 202.06. Id. at 68-69.

2

functional capacity (RFC), and inability to do his past relevant work.[4]  R. at 15-16.  The ALJ's decision remains relevant to whether substantial evidence supports the Commissioner's final decision that Peck failed to prove he was disabled before August 7, 2018.

I must accept all ALJ findings of fact that are supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000); see also 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence").  I "review the record as a whole to determine whether substantial evidence supports a factual finding," Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014), but may not "re-weigh the evidence or impose [my] own factual determinations," Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is appropriate only if an error affected the outcome of the case.  See Rutherford, 399 F.3d at 553.  As explained below, I find that substantial evidence supports the Commissioner's decision.

Peck testified that his left knee problems render him unable to work.  R. at 25-26.  He explained that he underwent a total left knee replacement in February 2016 and had revision surgery in December 2016.  Id. at 27.  Peck claims that his left knee has worsened since the second surgery, explaining that it locks up and swells.  Id. at 29-30.  He is unable to drive long

---

[4] The Appeals Council noted that the ALJ appropriately identified Peck's borderline age. R. at 14.  It explained, however, that when a borderline age situation exists and it is appropriate to use the higher age category, the ALJ must establish an onset date of the date of the ALJ's decision.  Id. at 15 (citing HALLEX I-2-2-42(C)(4)).  The Appeals Council concluded that it was an error of law for the ALJ to find an onset date of June 5, 2018 rather than August 7, 2018.  Id. Although the Appeals Council also explained other aspects of the proper step five determination, see id. at 15-16, its discussion is not relevant here because it upheld the ALJ's finding that Peck was not disabled on the alleged onset date of November 18, 2016.

distances, falls several times a week, must sleep in a recliner with his left leg elevated to reduce swelling, and can no longer use his riding mower. Id. at 25-26, 30-31. According to Peck, he has difficulty going up and down steps, and must alternate every 15 to 20 minutes between sitting with his legs elevated and walking. Id. at 32-34. He claimed that he has used a cane since the December 2016 revision surgery in case his knee goes out. Id. at 34-35.

Dr. Eric B. Smith, Peck's treating orthopedic surgeon, completed a Medical Source Statement dated June 2, 2017, diagnosing Peck with left total knee revision and continued pain and dysfunction. Id. at 701-07. He noted diffuse swelling of the left knee and subjective knee instability, but that the "knee objectively appears stable." Id. According to Dr. Smith, Peck can sit for a maximum of one to two hours continuously, but then must alternate postures by standing or walking for 15 minutes before returning to sitting. Id. at 703.[5] Dr. Smith checked "Yes, LEFT leg only" in response to a question whether it is medically necessary for Peck to elevate his legs while sitting to minimize pain. Id. He noted that elevation should be "to waist level or higher." Id. Dr. Smith opined that a hand-held assistive device is not medically required "but may help symptoms," that a cane could be used "if necessary," and that it is required only on uneven surfaces or for prolonged ambulation. Id. at 706. In a treatment note dated June 12, 2017, Dr. Smith also noted that, due to Peck's symptoms, "I do not see him working in a heavy labor position at all." Id. at 796. Peck alleges that the ALJ erred when he did not give controlling weight to Dr. Smith's opinions, which Peck claims support his argument that he was disabled as of November 18, 2016. Pl. Br. at 4-8.

---

[5]   Dr. Smith also opined that Peck can stand or walk for less than 15 minutes before needing to sit and that Peck has limited ability to lift and carry, balance, and stoop. R. at 703, 705.

A treating physician's opinion is entitled "controlling weight" only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[6]  20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion does not merit controlling weight, the ALJ must apply the same method used for other types of medical opinions and weigh the opinion based on listed regulatory factors.  20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6) (length and frequency of the treatment relationship, "nature and extent of the treatment relationship," the opinion's "supportability" and consistency with the record as a whole, the opining physician's specialization, and factors such as the opining physician's familiarity with the standards of the Social Security program).  An ALJ may "reject a treating physician's opinion outright" if it is contradicted by medical evidence.  Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008).

The ALJ considered Dr. Smith's opinions that Peck could not perform heavy labor work and would be limited to sedentary work that accommodated his need to elevate his leg, and that he would be markedly limited due to depression.  R. at 67.  The ALJ conceded Peck's inability to return to heavy work based on Peck's knee replacement history and residual symptoms.  Id.  He reasoned, however, that Peck's unremarkable physical findings were not consistent with a reduction to sedentary work.  Id.

Substantial evidence supports the ALJ's analysis of Dr. Smith's opinions.  The ALJ considered the objective medical records, which failed to support the extent of the functional

---

[6]   Because Peck filed his application for DIB on January 9, 2017, R. at 162-63, review of his treating medical source opinion is governed by 20 C.F.R. § 404.1527(c)(2).  For claims filed on or after March 27, 2017, such opinions are evaluated under 20 C.F.R. § 404.1520c.  See 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

5

limitations claimed by Peck and assessed by Dr. Smith.  The ALJ noted that postoperative imaging of Peck's knees have revealed good hardware placement without loosening,  R. at 65, 583, 709, and that physical examinations found no significant instability or swelling, id. at 65, 426, 599, 606, 710, 715.  The ALJ described two treatment records that predate the revision surgery, which reflect that Peck reported swelling if he worked out a lot, cut the grass, or was on his feet throughout the day, but exhibited full motor strength and stability, and ambulated with no difficulty and with no assistance.  Id. at 65, 296, 305, 599.

   The ALJ also considered the post-revision treatment records of Dr. Smith and Peck's primary care physicians.  Id. at 65-66.  The ALJ noted that, in January 2017, Peck exhibited no discomfort with range of motion and his motion "had improved nicely."  Id. at 65, 580.  In March 2017, Peck's primary care physician noted normal balance, gait and stance, and no motor dysfunction.  Id. at 66, 798-99.  That month, Dr. Smith observed that Peck's knee was filled with fluid, which was drained, but he exhibited full active extension, midrange and deep flexion of the knee were stable, and strength and sensation were appropriate.  Id. at 66, 717 (Dr. Smith noted that "certainly sedentary type job would be . . . beneficial to him and I think he easily [would] be able to perform this.").  The ALJ also considered Dr. Smith's June 2017 treatment notes which document that Peck's knee had a mildly-to-moderately swollen appearance but essentially full range of motion.  Id. at 66, 795.  Peck reported to Dr. Smith that he was "very active" at that time, performing physical therapy exercises at home and at the gym.  Id.  The ALJ also relied upon the September 2017, December 2017, and January 2018 treatment notes of Peck's primary care physician which show left joint knee tenderness on examination, but no swelling of the extremities, and normal gait and station without assistance.  Id. at 66, 781, 786-87, 792.  In addition, the ALJ pointed out that Dr. Smith's December 2017 treatment notes reflect that, while

6

Peck stated that he did not feel that his knee replacement was stable, he was nevertheless able to go hunting and perform activities, with occasional pain and numbness that came and went. Id. at 66, 709. Dr. Smith's examination on that date revealed mild swelling, full and active extension, flexion to 130 degrees, and excellent stability on full extension, with a subtle medial weakness that was reasonable for normal functioning. Id.

Such evidence establishes that the ALJ properly concluded that the unremarkable physical findings were inconsistent with Dr. Smith's opinion that Peck should be limited to sedentary work. See Brunson v. Comm'r of Soc. Sec., 704 F. App'x 56, 60 (3d Cir. 2017) (finding no error in ALJ's determination that medical opinion was inconsistent with record evidence including that physician's own findings).

Moreover, I reject Peck's argument that the ALJ failed to address Dr. Smith's opinion with respect to the use of a cane and Peck's need to elevate his left leg. Pl. Br. at 6-8. The ALJ noted that Peck used the cane during surgical recovery periods, but the evidence does not demonstrate any lasting need or prescription for a cane, which is consistent with Peck's "largely normal baseline gait on multiple examinations of record." R. at 66. See Zirnsak, 777 F.3d at 610 ("We review the record as a whole to determine whether substantial evidence supports a factual finding."); Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (a reviewing court "is not required to read the ALJ's opinion in a vacuum" and "the reviewing court [must] examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence"). Although the ALJ acknowledged Dr. Smith's statement that Peck needs to elevate his leg, the ALJ was not required to adopt this limitation in the RFC. See R. at 67; Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) ("An ALJ may accept some portions of a medical source's opinion while rejecting other opinions from the same

source."). Dr. Smith's opinion, including the reference to leg elevation, consisted of a check-the-box and fill-in-the-blank form and offers weak evidence in support of Peck's claims. See R. at 701-07; Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Nor was the ALJ required to accept the testimony of the vocational expert (VE) that the identified jobs would be eliminated if Peck needed a cane, or if Peck was required to elevate his leg. Pl. Br. at 6-8; R. at 42-43. Hypothetical questions posed to the VE need convey only functional limitations that are credibly established by the record. Zirnsak, 777 F.3d at 615. The ALJ may disregard VE testimony in response to a hypothetical question based on functional limitations that are not supported by the record. Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987). The record did not credibly support Dr. Smith's opinion that Peck needed to use a cane or elevate his leg; therefore, the ALJ properly declined to accept the VE testimony on this issue.[7]

An appropriate Order accompanies this Opinion.

---

[7] Peck also claims that the Appeals Council erred in finding that he became disabled on August 7, 2018, rather than November 18, 2016. Pl. Br. at 8. He does not contest the Appeals Council's reasoning, and in fact, offers no further discussion in support of this argument. See id. This argument fails for the same reasons discussed above.

8